UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| REGINA C. FILANNINO-RESTIFO, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>TD BANK, N.A,<br><br>Defendant. | Case No.: 16-2374 (JBS-JS) |
| DAVID DIAZ and RYAN FRANCO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>-vs.-<br><br>TD BANK, N.A,<br><br>Defendant. | Case No.: 16-2395 (JBS-JS) |
| NONA LUCE, on Behalf of Herself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>TD BANK, N.A,<br><br>Defendant. | Case No.: 16-2621 (JBS-JS) |
| DAVID SPECTOR, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>-vs.-<br><br>TD BANK, N.A,<br><br>Defendant. | Case No.: 16-2682 (JBS-JS) |

DAVID McENERNEY, on Behalf of
Himself and All Others Similarly
Situated,

                          Plaintiff,

          -vs.-                          Case No.: 16-2618 (JBS-JS)

TD BANK, N.A,
                          Defendant.

CHRISTINE KRULAN, Individually and
on Behalf of All Other Persons
Similarly Situated,

                          Plaintiffs,

          -vs.-                          Case No.: 16-02919 (JBS-JS)

TD BANK, N.A,
                          Defendant.

JUAN CARLOS MACIAS, Individually
and on Behalf of All Other Persons
Similarly Situated,

                          Plaintiffs,

          -vs.-                          Case No.: 16-03420 (JBS-JS)

TD BANK, N.A,
                          Defendant.

JEFFREY FEINMAN, Individually and
on Behalf of All Other Persons
Similarly Situated,

                          Plaintiffs,

          -vs.-                          Case No.: 16-2621 (JBS-JS)

TD BANK, N.A,

                          Defendant.

**BRIEF IN SUPPORT OF UNOPPOSED MOTION TO GRANT PRELIMINARY
APPROVAL TO PROPOSED CLASS ACTION SETTLEMENT, TO APPROVE
DISTRIBUTION OF PROPOSED SETTLEMENT NOTICE AND TO SET A HEARING
DATE FOR A FORMAL FAIRNESS HEARING ON PROPOSED SETTLEMENT**

**DeNITTIS OSEFCHEN PRINCE, P.C.**
Stephen P. DeNittis (SD-0016)
Joseph A. Osefchen (JO-5422)
Shane T. Prince (SP-0947)
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone:  (856) 797-9951
Facsimile:  (856) 797-9978

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**Page(s)**

Table of Authorities...................................................iii-vi

PREFATORY STATEMENT....................................................1

STATEMENT OF FACTS.....................................................4

    A. PROCEDURAL HISTORY............................................4

    B. DISCOVERY CONDUCTED BY THE PARTIES...........................9

    C. DISCOVERY.....................................................12

    D. EXPERIENCE OF INTERIM CLASS COUNSEL..........................12

        (a)  Criden..............................................13

        (b)  Wolf................................................13

        (c) Nagel................................................14

        (d)  Radice..............................................15

        (e)  DeNittis............................................15

        (f)  Bragar..............................................16

        (g)  DeBenedictis........................................17

    E. SETTLEMENT TERMS.............................................17

    F. KEY NOTICE PROVISIONS AND THE CLAIM FORMS....................21

LEGAL ARGUMENT.........................................................24

POINT I................................................................24

THIS COURT SHOULD GRANT PRELIMINARY APPROVAL
OF THE CLASS SETTLEMENT................................................24

    A. THE STANDARD FOR PRELIMINARY APPROVAL HAS BEEN MET...........24

POINT II.................................................................................…27

THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED........................27

    A. NUMEROSITY...................................................................27

    B. COMMONALITY.................................................................28

    C. TYPICALITY.................................................................…29

    D. ADEQUACY OF REPRESENTATION.........................................30

    E. THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED.................30

POINT IV............................................................................…...34

THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED BY THE COURT...34

Conclusion.........................................................................….35

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

Amchem Products, Inc. v. Windsor,
521 U.S. 591 (1997)................................................................27, 30, 31

Baby Neal v. Casey, 43 F.3d. 48, 57 (3d Cir. 1994)...............28, 29

Bell Atlantic v. Bolger, 2 F.3d 1304 (3d Cir. 1993).....................24

Bradburn Parent Teacher Store, Inc. v. 3M,
513 F. Supp. 2d 322, 328 (E.D. Pa. 2007)...........................................35

Chiang v. Veneman, 385 F.3d 256, 265 (3d. Cir. 2004)....................28

Coleman v. Commonwealth Land Title Ins. Co.,
318 F.R.D. 275 (E.D. Pa. 2016)........................................................33

Diaz v. TD Bank, N.A., No. 16-cv-2395...........................................6, 8

Feinman v. TD Bank, N.A., No. 652083/2016...................................4, 5

Filannino-Restifo v. TD Bank, N.A., No. 16-cv-2374...................5, 8

Furst v. Einstein Moomjy, 182 N.J. 1 (2004)....................................14

Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438
(E.D. Pa. 2008)................................................................................25

Georgine v. Amchem Product, Inc.,
83 F.3d 610, 631 (3d Cir. 1996)........................................................29

In re Baby Prods. Antitrust Litig.,
708 F.3d 163, 172-74 (3d Cir. 2013)..................................................26

In re Baldwin-United Corp., 105 F.R.D. 475, 478
(S.D.N.Y. 1984)................................................................................27

In re Community Bank of N. Va.,
418 F.3d 277, 309 (3d Cir. 2005).......................................................31

iii

In re General Motors Corp. Pick-Up Truck Fuel Tank
Products Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995).........24, 30

In re Ins. Brokerage Antitrust Litig., 2007 WL 2589950
(D.N.J. 2007), aff'd, 579 F.3d 241 (3d Cir. 2009)........................27

In re Mercedes-Benz Antitrust Litig.,
213 F.R.D. 180, 187 (D.N.J. 2003)...............................................31, 32

In re Pet Food Prods. Liab. Litig.,
629 F.3d 333 (3d Cir. 2010)............................................................24

In re Prudential Ins. Co. v. America Sales Litigation,
148 F.3d 283, 307-308 (3d. Cir. 1998)...27, 28, 30, 31, 33, 34, 35

In re Prudential Inc. Limited Partnerships Litigation,
163 F.R.D. 200, 209 (S.D.N.Y. 1995)........................................24, 26

In re Warfarin Sodium Antitrust Litig.,
391 F.3d 516, 535 (3d Cir. 2004)................................................24, 31

Jones v. Commerce Bankcorp Inc., 2007 LEXIS 52144 (D.N.J.).........26

Krimes v. JPMorgan Chase Bank, N.A.,
No. 15-5087, 2016 U.S. Dist. LEXIS 148912,
at *17 (E.D. Pa. Oct. 26, 2016).......................................................24

Krulan v. TD Bank, N.A., No. 16-cv-2919.......................................7, 8

Liebman v. J.W. Petersen Coal & Oil Co.,
73 F.R.D. 531, 534 (N.D. Ill. 1973)..................................................24

Luce v. TD Bank, N.A., No. 16-cv-2621.........................................5, 8

Luce v. TD Bank, N.A., No. L-1585-16..............................................5

Macias v. TD Bank, N.A., No. 16-cv-21298........................................4

Macias v. TD Bank, N.A., No. 16-cv-3420..........................................7

McEnerney v. TD Bank, N.A., No. 16-cv-2918......................................8

Phillips Petroleum Co. v. Shutts,
472 U.S. 797, 812 (1985)................................................................34

Spector v. TD Bank, N.A., No. L-1722-16............................................6

iv

_Spector v. TD Bank, N.A._, No. 16-cv-2682.....................................7, 8

_Stewart v. Abraham_, 275 F.3d 220, 226-227 (3d Cir. 2001)............28

_Sullivan v. DB Invs., Inc._,
667 F.3d 273, 298 (3d Cir. 2011).......................................................31

_Wal-Mart Stores, Inc. v. Visa USA, Inc._,
396 F.3d 96, 116 (2d. Cir. 2005).......................................................25

_Weiss v. York Hosp._, 745 F.2d 786, 809 (3d Cir. 1984)..................28

_Zinberg v. Washington Bancorp, Inc._,
138 F.R.D. 397, 406 (D.N.J. 1990)....................................................27

## STATUTES

Page(s)

Federal Rules of Civil Procedure 12(b)(1).........................................4

Federal Rules of Civil Procedure 12(b)(6).........................................4

Fed. R. Civ. P. 23.......................................................................1, 27

Fed. R. Civ. P. 23(e).......................................................................34

Federal Rules of Civil Procedure 23(a)............................................33

Federal Rules of Civil Procedure 23(b)(3).......................................34

Florida Deceptive & Unfair Trade Practices Act................................4

New Jersey Consumer Fraud Act..............................................4, 5, 6, 7

New York General Business Law § 349........................................4, 5, 6

New York General Business Law § 350...............................................5

Pennsylvania Unfair Trade Practices and
Consumer Protection Law..............................................................4, 8

Rule 23..........................................................................................34

Rule 23(a)...............................................................................27

Rule 23(a)(1)..........................................................................27

Rule 23(a)(2)..........................................................................28

Rule 23(a)(3)..........................................................................29

Rule 23(b)(3).........................................27, 30, 31, 32, 35

Rule 23(c)...............................................................................35

Rule 23 (c)(3).........................................................................35

Rule 23(e)...............................................................................34

Truth in Consumer Contract, Warranty and Notice Act............5, 6, 7

**OTHER**

**Page(s)**

Manual for Complex Litigation, 4th Ed. §21.632.............................25

Newberg on Class Actions, 4th Ed..........................................24, 27, 34

## PREFATORY STATEMENT

This brief is submitted in support of preliminary approval of a class action settlement (the "Settlement") between Plaintiffs Regina C. Filannino-Restifo, David Diaz, Ryan Franco, Nona Luce, David Spector, David McEnerney, Christine Krulan, Juan Carlos Macias, Crossroad Foundation, Andrew Sobczak, Alexis Mullen, Tracy Olechowski, and Jeffrey Feinman (herein "Plaintiffs" or "Class Representatives") and Defendant TD Bank, N.A. (herein "TD Bank" or "the Bank"). As detailed below, this Settlement satisfies Fed. R. Civ. P. 23 and is fair, reasonable, and adequate. Consequently, Plaintiffs request that preliminary approval be granted.

This consolidated litigation concerns TD Bank's coin-counting machines, known as Penny Arcades. The Penny Arcade machines were introduced in 1999, by TD Bank's predecessor Commerce Bank, N.A., and were available to TD Bank's customers and the general public. When a consumer put coins into the Penny Arcade machine, the machine would sort the coins by denomination and count their value. The machine then issued a printed transaction receipt to the consumer purporting to show the amount counted. The consumer could redeem the receipt with a teller for cash or, if the consumer was a TD Bank customer, deposit the amount into his or her account. TD Bank customers used the Penny Arcades free of charge. Beginning in 2010, Non-customers were charged a fee (8% as of 2016). TD Bank promoted the Penny Arcade as "one of the bank's most unique

1

features" in delivering "the convenience for which TD is so well known."

In April 2016, it came to light that TD Bank's 1,183 Penny Arcade machines allegedly had been shortchanging users for years. On April 6, 2016, NBC's Today Show ran a story on the undercounting, and reported that all of the machines they tested in the New York City area had allegedly undercounted the test coins, and by as much as 14%. After news organizations widely reported the alleged problem, numerous customers and other consumers who had used TD Bank's Penny Arcades prior to April 2016 commenced this consolidated action to recover damages for the losses they sustained due to the undercounting.

Shortly after the Today Show report, TD Bank took the machines out of service for evaluation and testing. On May 19, 2016, TD Bank announced that, after reassessing the machines, it was permanently decommissioning them.

Plaintiffs and the Bank agreed to attempt a mediated settlement of this Action. After several sessions with a well-respected mediator, former United States Magistrate Judge Joel B. Rosen, the parties have reached an agreement on the terms of this Settlement.

The Settlement provides the Settlement Class[1] with significant monetary relief, which Plaintiffs estimate to be at least 100% of what could have been recovered at trial. Pursuant to the Settlement, TD Bank will establish a $7.5 million Settlement Fund, from which payments will be made to eligible members of the Settlement Class.

The Settlement also provides that Class Counsel may petition for an award of attorneys' fees not to exceed $1.95 million, which amount, as approved by the Court, TD Bank will pay separately from the Settlement Fund. Class Counsel may also seek "service awards" to be paid to the Plaintiffs, in an aggregate amount not to exceed $50,000, which, subject to Court approval, will be paid separately from the Settlement Fund, such that the total of attorneys' fees and service awards shall not exceed $2 million. Class Counsel may seek reimbursement of litigation costs in an amount not to exceed $100,000, which amount shall be paid out of the Settlement Fund. Finally, the Settlement provides that TD Bank will pay the cost of Notice to the Class and settlement administration, separately from the Settlement Fund. Additionally, TD Bank has agreed not to resume using the machines that are the subject of the Actions to provide customer self-service coin-counting in TD Bank stores, and thus to avoid further injury to the Class from those machines.

---

[1] Capitalized terms not defined herein have the same meaning as set forth in the Settlement Agreement.

Therefore, this Settlement provides a valuable recovery for Settlement Class Members and falls well within the range of reasonableness, warranting preliminary approval.

## STATEMENT OF FACTS

### A. PROCEDURAL HISTORY

On April 11, 2016, Plaintiff Juan Carlos Macias filed Macias v. TD Bank, N.A., No. 16-cv-21298 ("Macias"), a class action complaint, in the United States District Court for the Southern District of Florida, alleging that the Penny Arcade machines undercounted deposits and asserting claims for unjust enrichment, breach of contract, and violations of the Florida Deceptive & Unfair Trade Practices Act.   On May 4, 2016, TD Bank moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  On May 16, 2016, Plaintiff Macias, together with new Plaintiffs, Crossroad Foundation, Andrew Sobczak, Alexis Mullen, and Tracy Olechowski, filed an Amended Class Action Complaint asserting claims for violations of New York General Business Law § 349, the New Jersey Consumer Fraud Act, and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, as well as unjust enrichment and breach of contract.

On April 18, 2016, Plaintiff Jeffrey Feinman filed Feinman v. TD Bank, N.A., No. 652083/2016 ("Feinman"), a class action complaint, in the Supreme Court of New York, County of New York, alleging that the Penny Arcade machines undercounted deposits and

4

asserting claims for breach of contract, conversion, fraud, violations of New York General Business Law § 349, violations of New York General Business Law § 350, negligence, and unjust enrichment. TD Bank removed the action to the United States District Court for the Southern District of New York on May 9, 2016, as Feinman v. TD Bank, N.A., No. 16-cv-3448. On June 3, 2016, Plaintiff Feinman moved to transfer the case to the United States District Court for the District of New Jersey, as Feinman v. TD Bank, N.A., No. 16-cv-3435, and on June 7, 2016, the motion was granted.

On April 25, 2016, Plaintiff Nona Luce filed Luce v. TD Bank, N.A., No. L-1585-16 ("Luce"), a class action complaint, in the Superior Court of New Jersey, Camden County, alleging that the Penny Arcade machines undercounted deposits and asserting claims for breach of contract, violations of the New Jersey Consumer Fraud Act, violations of the Truth in Consumer Contract, Warranty and Notice Act, and unjust enrichment. TD Bank removed the action to the United States District Court for the District of New Jersey on May 9, 2016, as Luce v. TD Bank, N.A., No. 16-cv-2621. The case was stayed by order of the Court on May 13, 2016.

On April 27, 2016, Plaintiff Regina C. Filannino-Restifo filed Filannino-Restifo v. TD Bank, N.A., No. 16-cv-2374 ("Filannino-Restifo"), a class action complaint, in the United States District Court for the District of New Jersey, alleging

5

that the Penny Arcade machines undercounted deposits and asserting claims for violations of New York General Business Law § 349, violations of the New Jersey Consumer Fraud Act, and unjust enrichment.   The case was stayed by order of the Court on May 13, 2016.

On April 28, 2016, Plaintiffs David Diaz and Ryan Franco filed Diaz v. TD Bank, N.A., No. 16-cv-2395 ("Diaz"), a class action complaint, in the United States District Court for the District of New Jersey, alleging that the Penny Arcade machines undercounted deposits and asserting claims for violations of New Jersey's Consumer Fraud Act and similar state laws, fraudulent concealment/nondisclosure, negligent misrepresentation, unjust enrichment, breach of contract, violations of the Truth in Consumer Contract, Warranty and Notice Act, and conversion.   The case was stayed by order of the Court on May 13, 2016.

On May 5, 2016, Plaintiff David Spector filed Spector v. TD Bank, N.A., No. L-1722-16 ("Spector"), a class action complaint, in the Superior Court of New Jersey, Camden County, alleging that the Penny Arcade machines undercounted deposits and asserting claims for violations of the New Jersey Consumer Fraud Act, violations of the Truth in Consumer Contract, Warranty and Notice Act, and unjust enrichment/disgorgement.   TD Bank removed the action to the United States District Court for the District of New

Jersey on May 11, 2016, as <u>Spector v. TD Bank, N.A.</u>, No. 16-cv-
2682.  The case was stayed by order of the Court on May 17, 2016.

On May 17, 2016, the Diaz Plaintiffs moved the Judicial Panel
on Multidistrict Litigation to transfer and centralize the related
actions in the United States District Court for the District of
New Jersey.

On May 17, 2016, the United States District Court for the
Southern District of Florida stayed <u>Macias</u> and terminated TD Bank's
Motion to Dismiss.  On June 3, 2016, the Macias Plaintiffs moved
for a transfer of venue to the United States District Court for
the District of New Jersey.  On June 13, 2016, the United States
District Court for the Southern District of Florida granted the
Macias Plaintiffs' motion to change venue, and the <u>Macias</u> case was
docketed in the District of New Jersey as No. 16-cv-3420.  On June
14, 2016, the Judicial Panel on Multidistrict Litigation denied as
moot the Diaz Plaintiffs' motion for transfer.

On May 23, 2016, Plaintiff Christine Krulan filed <u>Krulan v.
TD Bank, N.A.</u>, No. 16-cv-2919 ("Krulan"), a class action complaint,
in the United States District Court for the District of New Jersey,
alleging that the Penny Arcade machines undercounted deposits and
asserting claims for violations of the New Jersey Consumer Fraud
Act,     fraudulent     concealment/nondisclosure,     negligent
misrepresentation,  unjust  enrichment,  breach  of  contract,
violations of the Truth in Consumer Contract, Warranty and Notice

Act, and conversion.  The case was stayed by order of the Court on May 26, 2016.

On May 23, 2016, Plaintiff David McEnerney filed McEnerney v. TD Bank, N.A., No. 16-cv-2918 ("McEnerney"), a class action complaint, in the United States District Court for the District of New Jersey, alleging that the Penny Arcade machines undercounted deposits and asserting claims for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, common law fraud, and breach of contract.  The case was stayed by order of the Court on May 26, 2016.

All of the matters referenced above were assigned to the Honorable Jerome B. Simandle, United States District Judge, and the Honorable Joel Schneider, United States Magistrate Judge, of the District of New Jersey, Camden Vicinage (together the "Court").

On June 7, 2016, the Court issued a case management order consolidating the Filannino-Restifo, Diaz, Luce, Spector, McEnerney, and Krulan cases for pretrial purposes.  The Court extended the stay for all cases and ordered Plaintiffs in the consolidated cases to select an Interim Lead Counsel and coordinate all communication with TD Bank.

No dispositive motions are pending in these Actions; nor have any been decided.

The Parties participated in arms'-length mediation sessions on September 30, October 18, and November 2, 2016, with the

Honorable Judge Joel B. Rosen, Retired United States Magistrate Judge, of Montgomery, McCracken, Walker, & Rhoads LLP serving as mediator. On November 2, 2016, the Parties reached an agreement in principle to settle the Actions. Subsequently, the Parties participated in a fourth mediation session, on January 18, 2017, with Judge Rosen, at which the Parties agreed on an award of attorneys' fees and costs, subject to the Court's approval. Since that time, the parties have jointly participated in the process of drafting the Settlement Agreement, a copy of which is annexed to the Declaration of Stephen P. DeNittis as Exhibit A.

## B. DISCOVERY CONDUCTED BY THE PARTIES

Interim Class Counsel have conducted substantial discovery prior to entering into the Settlement and have fully investigated the facts and law relevant to the subject matter of the Actions. Interim Class Counsel propounded discovery requests upon TD Bank. In response, TD Bank produced bank-wide information, for most of the Class Period, disclosing the number of Penny Arcade transactions, how many of those transactions were conducted by TD Bank customers as opposed to non-customers, the aggregate value of the redeemed receipts, and the aggregate amount of fees that TD Bank collected from non-customers on their transactions.

Interim Class Counsel also obtained data disclosing: (a) all of the Bank's stores that had one or more Penny Arcade machines, including store addresses as of July 22, 2016; (b) the serial

numbers of each Penny Arcade machine in each store; (c) the average value of coins deposited in the Penny Arcade machines at each store, from November 2010 to March 2016; (d) the value of the coins of each denomination counted at each store from May 2015 through April 2016.

Interim Class Counsel also obtained the Bank's policies and procedures for collecting, counting and reconciling coins with receipts and for checking the accuracy of the machines. The Bank also disclosed the number of consumer complaints concerning alleged miscounting by the Penny Arcade machines over the past three and a half years; information concerning how the Penny Arcade machines were manufactured, operated, and maintained; and information concerning how the coins were collected from the Penny Arcade Machines.

In addition, the Plaintiffs responded to discovery requests propounded by TD Bank.

Plaintiffs also retained David Sise as an expert regarding the Penny Arcade machines. Mr. Sise was employed as a Field Engineer by Bancsource for close to ten years. As part of his responsibilities for over a decade, Mr. Sise repaired and maintained the same type and model of coin counting machines as the Penny Arcades including the Mach 3 through Mach 12 version coin counting machines, some of which were at issue in this litigation. Interim Class Counsel, along with Mr. Sise,

10

coordinated the testing of a number of Penny Arcade machines throughout the region. A testing protocol was established and implemented to assess error rates, and Mr. Sise and at least one representative of Interim Class Counsel attended each of the tests. Mr. Sise tested a sampling of nineteen machines and this testing did not yield appreciable differences.

TD Bank retained Deloitte Transactions and Business Analytics LLP ("Deloitte") to conduct testing of the Penny Arcade machines. Deloitte developed a testing protocol to analyze potential error rates associated with the Penny Arcade machines. TD's testing protocol consisted of:

i.    The identification of the population of machines to be tested;

ii.   A statistically-based approach to determine the coin amounts selected for testing the machines; and

iii.  Detailed procedures and training to aid in the execution of testing.

TD Bank tested over 1000 machines representing approximately 90% of all machines. TD Bank tested each machine twice (Test A and Test B), with different amounts and values of coins. Those tests yielded a net undercount of 0.117% for Test A and a net undercount of 0.090% for Test B. Plaintiffs tested a sampling of nineteen machines. The Settlement Agreement provides for a recovery to the

proposed class of 0.26%, which exceeds the net undercount in each of TD Bank's tests and in Plaintiffs' tests.

## C.   DISCOVERY

Prior to finalizing the proposed Settlement Agreement Plaintiffs engaged in discovery. Specifically, Plaintiffs retained experts Allise Wachs, Ph.D., a statistician with a focus on product design and machinery operations, and Abba M. Kreiger, Ph.D. a Professor of Statistics at the University of Pennsylvania, to review Deloitte's data and testing methodology to determine its reliability. After review of Deloitte's data and testing methodology, both experts concluded that such data and testing was reliable for purposes of entering into the Settlement Agreement.

## D.   EXPERIENCE OF INTERIM CLASS COUNSEL

On March 27, 2017, Judge Simandle entered an Order appointing Michael Criden of Criden & Love, P.A. ("Criden"), Jeffrey Smith of Wolf Haldenstein Adler Freeman & Herz, LLP ("Wolf"), Bruce Nagel of Nagel Rice, LLP ("Nagel"), and John Radice of Radice Law Firm ("Radice") as Interim Co-Lead Counsel, Stephen DeNittis of DeNittis Osefchen Prince, P.C. as Interim Liaison Counsel ("DeNittis"), and DeNittis, David Stone of Bragar Eagel & Squire, P.C. ("Bragar"), Thomas Booth, Jr. of Law Offices of Thomas T. Booth, Jr., LLC ("Booth")[2]   and Michael DeBenedictis of

---

[2]   Mr. Booth was recently appointed a Superior Court judge and is no longer participating in this matter.

DeBenedictis & DeBenedictis LLC ("DeBenedictis") as members of Plaintiffs' Executive Committee ("PEC") (Criden, Wolf, Nagel, Radice, DeNittis, Bragar, and DeBenedictis are collectively referred to as "Interim Class Counsel"). These highly experienced attorneys participated in the negotiation of the Settlement Agreement.

**(a)   Criden**

Michael Criden is a member in good standing of The Florida Bar since 1987 and is admitted to practice in the Southern District of Florida since 1988.  Mr. Criden's practice is concentrated in the areas of class actions and complex litigation.  In 2007, he founded Criden & Love, P.A.  He and/or his firm have served in leadership capacities in a number of class actions and multidistrict litigation proceedings.  See Criden resume attached to the DeNittis Declaration at Exh. E.

**(b)   Wolf**

Jeffrey Smith is a partner of Wolf Haldenstein Adler Freeman & Herz, LLP. He has substantial experience in complex civil litigation, including class and derivative actions and representation of investors in tender offer, merger, and takeover litigation.  Mr. Smith also handles complex cases in other areas of the law including the Fair Labor Standards Act, state wage and hour law, and consumer deception statutes.  Mr. Smith is admitted to practice in New York State and in California as well as before

the Supreme Court of the United States, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Circuits, the United States Tax Court, and the United States District Courts for the Southern and Eastern Districts of New York, the Southern, Central and Northern Districts of California and the Districts of Colorado and Nebraska.   See Wolf resume attached to the DeNittis Declaration at Exh. E.

### (c) Nagel

Bruce Nagel is a partner at Nagel Rice, LLP which was founded in 1983. Nagel Rice is widely recognized as one of the premier litigation firms in the New York metropolitan area having handled class actions and other complex actions in federal and state courts throughout the United States.   Nagel Rice has garnered over $1 billion in settlements and verdicts including the recent $225 million settlement with Exxon-Mobil in a natural resource damages action on behalf of the State of New Jersey. Nagel Rice has also helped mold New Jersey consumer fraud law before the New Jersey Supreme Court in the case Furst v. Einstein Moomjy, 182 N.J. 1 (2004).   In addition, Nagel Rice was recently named one of the Top 50 Plaintiffs Trial firms in the country by the National Law Journal. In its 33-year history, the firm has more than 150 settlements and verdicts in excess of $1 million and has settled over $100 million in consumer class actions as lead or co-lead counsel. Nagel Rice's high profile cases have been featured on 60

Minutes, Nightline, Good Morning America, Dan Abrams Reports, and in news and print media throughout the country. See Nagel Rice resume attached to the DeNittis Declaration at Exh. E.

    **(d)**   <u>Radice</u>

John Radice of the Radice Law Firm, PC has substantial experience in class actions and other complex litigations. Mr. Radice clerked for Judge Edith Brown Clement in the United States Court of Appeals for the Fifth Circuit, and has been recognized by Super Lawyers every year from 2011 to the present, first as a "Rising Star" (an honor received by no more than 2.5% of lawyers in the state) and then as a "Super Lawyer." Mr. Radice is a graduate of Princeton University and New York University School of Law, where he was a Hays Fellow. Prior to founding the Radice Law Firm, Mr. Radice associated with some of the largest and most-respected plaintiffs' firms in the country. See Radice resume attached to the DeNittis Declaration at Exh. E.

    **(e)**   <u>DeNittis</u>

Stephen DeNittis is a named shareholder with DeNittis Osefchen Prince, P.C. He is a member in good standing of the New Jersey and Pennsylvania Bar and is admitted to practice in the District of New Jersey, Eastern District of Pennsylvania, Western District of Tennessee, Third Circuit Court of Appeals, and U.S. Supreme Court. DeNittis Osefchen Prince, P.C. is a regional litigation firm specializing in class actions, complex litigation

and catastrophic personal injury matters.  The firm has long been a leader in the representation of consumers in a wide variety of class actions, both locally and nationally, involving claims for consumer fraud, food product mislabeling, wage and hour violations, RESPA violations, mass construction defects, and overcharging in the health club and beauty school industries. These cases include serving as sole or co-lead counsel in over 160 certified class actions in state and federal court recovering over $100 million dollars for over 1,000,000 consumers nationwide. See DeNittis resume attached to the DeNittis Declaration at Exh. E.

    **(f)** <u>**Bragar**</u>

David J. Stone is a partner in the firm Bragar Eagel & Squire, P.C., having joined in May 2011. Mr. Stone has extensive experience litigating complex class and derivative actions on behalf of consumers and stockholders throughout the nation.  Mr. Stone is a member of the bars of the State of New York and the State of California (inactive). He is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the Northern District of California, and the United States Court of Appeals for the Second and Third Circuits.  See Bragar resume attached to the DeNittis Declaration at Exh. E.

    **(g)** <u>**DeBenedictis**</u>

Based in suburban Philadelphia, DeBenedictis & DeBenedictis, LLC has substantial experience handling complex class action

litigation in Federal Court. Regularly representing consumers, DeBenedictis & DeBenedictis' national practice includes lead, co-lead, and liaison counsel positions on cases of national concern, with the firm currently prosecuting anti-trust, consumer protection, and false claim act violations on behalf of funds, consumers and the federal government. Representing plaintiffs in such actions for the last 15 years, the firm's founder, Michael DeBenedictis brings a unique background to his practice. As reflected in his attached biography, he currently serves in a lead, co-lead or liaison position in multiple class actions. See DeBenedictis resume attached to the DeNittis Declaration at Exh. E.

Hence, Interim Class and Liaison Counsel have the necessary expertise and experience to resolve this action.

E.   **SETTLEMENT TERMS**

Under the Settlement, TD Bank will establish a $7.5 million Settlement Fund for the benefit of the Settlement Class. TD Bank will deposit this sum into an Escrow Account, to be distributed in accordance with the Settlement as follows: (¶58, 95)

(1) Settlement Class Members who used the Penny Arcade machines during the Class Period as a TD Bank account holder, and for whom the Parties can, with reasonable effort, obtain records of their transactions, will receive an Automatic Distribution from the Settlement Fund. Each such Settlement Class Member will

receive an automatic distribution equal to (a) the aggregate amount of such Settlement Class Member's Penny Arcade transactions, per TD Bank's records; multiplied by (b) a Multiplier of 0.26% (a percentage consistent with both the Plaintiffs' expert's findings and the Bank's expert's findings).

(2) Settlement Class Members who used the Penny Arcade machines during the Class Period while a non-account holder may submit a written request (a "Claim") to the Settlement Administrator, as set forth in the Settlement Agreement, seeking a distribution from the Settlement Fund. Any distribution received in response to such Claim (a "Claim Distribution") shall be in addition to and not exclusive of any Automatic Distribution paid made to the same Settlement Class Member, provided that no Settlement Class Member may submit a Claim for any Penny Arcade transaction that occurred while said Settlement Class Member had an account with TD Bank. If the Settlement Administrator approves a Claimant's Claim, the total dollar amount of the Claimant's Claim Distribution shall be determined by multiplying the Multiplier by the verified dollar amount of that Claimant's Penny Arcade transactions. If the Claimant cannot provide documentation to substantiate the claimed amount, the maximum dollar amount of that Claimant's Penny Arcade Transactions shall be considered to be $500.00.

(3) In addition to the distributions set forth above, each Settlement Class Member shall receive a pro rata share of the Residual Settlement Fund, if any, remaining after payment of the Automatic Distributions, Claim Distributions and any award of litigation costs to Class Counsel.

(4) Finally, any remaining amounts in the Settlement Fund after payments of the Automatic Distributions, Claim Distributions, Residual Settlement Fund distribution, and litigation costs shall be distributed through a residual *cy pres* program.

The Settlement Administrator shall make such distributions within 30 days after the Effective Date for Settlement Class Members who had not opted out. (¶115). Current Account Holders eligible for a distribution will receive an account credit directly into the Account Holder's Account from TD Bank, and will be notified of the distribution with an explanation. (¶116) Settlement Class Members who are eligible to receive a distribution, but who are not Current Account Holders, (or if they are but TD Bank is not reasonably able to provide an account credit), will receive the distribution by check from the Settlement Administrator. (¶117)

TD Bank further agrees not to resume using the Penny Arcade machines that are the subject of the Actions to provide customer self-service coin-counting in TD Bank branches.

These elements of the settlement serve as the consideration for dismissal of this action against TD Bank, and the Release by Plaintiffs and Class Members of any claims resulting from (i) any allegedly fraudulent, deceptive, negligent, or misleading act, representation, or omission made by TD Bank or its employees or agents related to Penny Arcade machines; (ii) any alleged failure of a Penny Arcade machine to perform an accurate count of coins deposited into the machine; or (iii) any alleged failure by TD Bank or its employees or agents to deliver to any user of a Penny Arcade machine the full value of coins deposited by that user into the machine (the "Released Claims"). (¶119-125)

Pursuant to the Settlement, TD Bank has selected Garden City Group, LLC as the Settlement Administrator to process Claims and distributions from the Settlement Fund.  The Parties seek the approval of this Settlement Administrator as part of this Preliminary Approval Motion. TD Bank will pay the Settlement Administrator's Administration Costs, meaning all reasonable fees, costs, charges, and expenses of the Settlement Administrator, including the costs of Notice, which will not reduce the Class Payment Amount. (¶68)

After reaching a settlement in principle, the parties agreed that, subject to the Court's final approval, the named Plaintiffs who are serving as Class Representatives are entitled to seek service awards in recognition of the amount of time and effort

they expended in acting as Class Representatives. Class Representatives will be seeking an aggregate total of $50,000 to be allocated by Class Counsel. (¶128, 131) The Parties also agreed that, subject to the Court's final approval, Class Counsel shall be entitled to seek an award of attorneys' fees and costs of up to $1,950,000. (¶127) The amount awarded by the Court for attorneys' fees and service awards will not reduce the Class Payment Amount. (¶68) The Parties also agreed that Class Counsel may collectively apply to the Court for an award of Litigation Costs incurred in connection with the case not to exceed $100,000 which shall be paid from the Settlement Fund. (¶67)

F.   **KEY NOTICE PROVISIONS AND THE CLAIM FORMS**

Upon Preliminary Approval of the Settlement, at the direction of Class Counsel, the Notice Administrator shall implement the Notice Program using the forms of Notice approved by the Court in the Preliminary Approval Order. (See Exs. 1-3 to Settlement Agreement for the form of the notices). The Notice shall include, among other information:  a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; a description of the Claims process; and the URL address of the Settlement Website at which Settlement Class

Members may access this Agreement and other related documents and information. (¶77)

The Settlement Administrator shall establish a Settlement Website as a means for Settlement Class Members to obtain additional notice of and information about the Settlement through and including hyperlinked access to the Settlement Agreement; the Notice; the Preliminary Approval Order the Settlement; the Final Approval Order; the Claim Form, and other documents as Class Counsel and TD Bank agree to post which will remain on the Settlement Website at least until Final Approval. (¶76).

The Parties have negotiated and agreed upon a comprehensive Notice Program consisting of several types of Notice, as set forth in the Settlement Agreement. Notice shall be provided to the Settlement Class in at least one of three ways: Mailed Notice, Publication Notice, and Long-Form Notice on the Settlement Website. (¶43).

Upon receiving the names and last known mailing, email, or other addresses of identifiable Settlement Class Members, the Settlement Administrator shall run the addresses through the National Change of Address Database or other similar data source, and shall send to all such identifiable Settlement Class Members the Mailed Notice in written form (the "Initial Mailed Notice"). The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notices that are returned as

undeliverable and complete the re-mailing of Mailed Notice to those
Settlement Class Members whose new addresses were identified as of
that time through address traces. This process shall be completed
no later than 90 days before the Final Approval Hearing. (¶¶ 85-
87)

The Settlement Administrator will also effectuate the
Publication Notice by arranging for publication using a format and
other specifications agreed to by the Parties and approved by the
Court which shall be completed by the Notice Deadline. (¶¶89-90).

The Settlement Administrator shall also establish a toll-free
telephone number as provided in Paragraph 75 of the Settlement
Agreement by the Notice Deadline. (¶91)

For Non-Account Holders making a Claim, Claim Forms shall be
available for download from the Settlement Website or by writing,
calling, or emailing the Settlement Administrator. (¶104-105) The
Claim Forms may be submitted to the Settlement Administrator by
U.S. Mail or by upload to the Settlement Website.

The Claim Forms are clearly worded and do not require an
unreasonable amount of time or effort to complete, plus the ability
to submit Claim Forms either by mail or electronically should
increase participation.

## LEGAL ARGUMENT

### POINT I

### THIS COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE CLASS SETTLEMENT

**A.   THE STANDARD FOR PRELIMINARY APPROVAL HAS BEEN MET**

This Circuit strongly favors the settlement of class actions and other complex litigation. In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). See also, In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995). Where the parties can resolve the litigation through good faith and arms-length negotiations, judicial resources can be preserved and the public interest is furthered. Bell Atlantic v. Bolger, 2 F.3d 1304 (3d Cir. 1993); In re Pet Food Prods. Liab. Litig., 629 F.3d 333 (3d Cir. 2010)("we reaffirm the overriding public interest is settling class action litigation.").

In the preliminary approval stage, the Court must first determine whether the proposed settlement "appears to fall within the range of possible approval." Krimes v. JPMorgan Chase Bank, N.A., No. 15-5087, 2016 U.S. Dist. LEXIS 148912, at *17 (E.D. Pa. Oct. 26, 2016); In re Prudential Inc. Limited Partnerships Litigation, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); Liebman v. J.W. Petersen Coal & Oil Co., 73 F.R.D. 531, 534 (N.D. Ill. 1973); Newberg on Class Actions, 4th Ed. §13:64. Preliminary approval is

not binding and should be granted unless the proposed settlement is obviously deficient. Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438 (E.D. Pa. 2008), Wal-Mart Stores, Inc. v. Visa USA, Inc., 396 F.3d 96, 116 (2d. Cir. 2005). As set forth in the Manual for Complex Litigation, 4th Ed. §21.632:

> Review of a proposed class action settlement generally involves two hearings.  First, counsel submits the proposed terms of settlement and the judge makes a preliminary fairness evaluation.  In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

The proposed Settlement falls well within the range of reasonableness, and the relief available to class members is fair and adequate. The $7.5 million Settlement Fund represents approximately 100% of the Class-wide damages, pursuant to the conclusions of Plaintiffs' expert. TD Bank has records for Account Holders, who conducted approximately 78.5% of Penny Arcade transactions, accounting for more than 80% of the overall dollar volume of Penny Arcade transactions.  TD Bank will deposit Automatic Distributions directly into the accounts of those

Settlement Class Members who conducted Penny Arcade transactions as Account Holders and remain Account Holders, and will mail Automatic Distributions in the form of checks to those Settlement Class Members who conducted Penny Arcade transactions as Account Holders but do not remain Account Holders. Those two groups of Settlement Class Members need not take any action to receive their distributions. For Settlement Class Members who conducted Penny Arcade transactions when they were not Account Holders, the Claim Form will be easy to fill out. If Claimants cannot provide proof of their transactions, they can still submit a claim for transactions that they allege they conducted, under penalty of perjury, and their transaction amount will be capped at $500. In addition, the potential, limited *cy pres* award is permissible under applicable Third Circuit precedent. See In re Baby Prods. Antitrust Litig., 708 F.3d 163, 172-74 (3d Cir. 2013).

In making a preliminary determination of the fairness, reasonableness and adequacy of the settlement, the Court should consider whether the proposed settlement resulted from arms-length negotiations between experienced counsel. Prudential, 163 F.R.D. at 209; Jones v. Commerce Bankcorp Inc., 2007 LEXIS 52144 (D.N.J.). This criterion has clearly been satisfied as the settlement was negotiated over a period of many months by savvy counsel with extensive class action experience and the assistance of a Mediator who is a former federal judge and well versed in class actions.

## POINT II

## THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

The parties seek preliminary certification of the following Class for settlement purposes:

> All persons in the United States who, between April 11, 2010 and Preliminary Approval, used a TD Bank Penny Arcade machine to exchange coins for a credit to a TD Bank Account or for cash. Excluded from the Settlement Class are all current TD Bank employees, officers and directors, counsel for TD Bank, Class Counsel, the judges presiding over the Actions, and the immediate family members of such judges. (¶64)

A class may be preliminarily certified for settlement purposes if it conforms to the requirements of Fed. R. Civ. P. 23. In re Baldwin-United Corp., 105 F.R.D. 475, 478 (S.D.N.Y. 1984); Newberg at 13:64. See Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997); In re Prudential Ins. Co. v. America Sales Litigation, 148 F.3d 283, 307-308 (3d. Cir. 1998); In re Ins. Brokerage Antitrust Litig., 2007 WL 2589950 (D.N.J. 2007), aff'd, 579 F.3d 241 (3d Cir. 2009). This Class Action Settlement satisfies each of the four requirements for class certification under Rule 23(a) and Rule 23(b)(3).

### A.   NUMEROSITY

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. In re Prudential Ins. Co., 148 F.3d at 309; Zinberg v. Washington Bancorp, Inc., 138 F.R.D. 397, 406 (D.N.J.

1990). There is no magic number needed to satisfy numerosity. See, Stewart v. Abraham, 275 F.3d 220, 226-227 (3d Cir. 2001); See also, Weiss v. York Hosp., 745 F.2d 786, 809 (3d Cir. 1984) (Ninety-two class members sufficient to satisfy numerosity.) Here, there were close to 1,200 Penny Arcade machines used at TD Bank branches from April 2010 through April 2016. Discovery established that more than 30 million transactions took place at these machines.

### B.   COMMONALITY

To satisfy the commonality requirement under Rule 23(a)(2), plaintiffs must demonstrate that "'at least one question of fact or law' is common to each member of [the] prospective class." Stewart v. Abraham, 275 F.3d at 227. Class members do not have to share identical claims or claims arising from the same operative facts.   See In re Prudential Ins., 148 F.3d at 310; Baby Neal v. Casey, 43 F.3d. 48, 57 (3d Cir. 1994) (Factual differences in the claims of class members do not defeat certification).   The commonality standard of Rule 23(a)(2) is not a high bar. Chiang v. Veneman, 385 F.3d 256, 265 (3d. Cir. 2004). Here, there are numerous common questions of law and fact, including:

a.   Whether all of TD Bank's Penny Arcades shortchanged customers;

b.   When TD Bank first became aware (or should have become aware) that its Penny Arcades were shortchanging customers;

c.   Whether the Penny Arcades' shortchanging customers is a violation of the New Jersey Consumer Fraud Act; and

d.   Whether TD Bank knew or should have known that its Penny Arcades were shortchanging customers.

Thus, commonality is satisfied.

C.   **TYPICALITY**

In order to satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. See, Georgine v. Amchem Product, Inc., 83 F.3d 610, 631 (3d Cir. 1996). Typicality seeks to insure that there are no conflicts between the class representative claims and the claims of the class members so that the "named plaintiffs have incentives that align with those of absent class members." Baby Neal v. Casey, 43 F.3d at 57.

The Penny Arcades allegedly shortchanged customers who utilized the machines across-the-board.  Class Representatives were all exposed to the same acts and/or omissions. The factual bases of TD Bank's alleged misconduct are common to the members of the Class and represent a common thread of fraudulent misconduct and deceptive trade practices resulting in injury to all proposed Class Members. Plaintiffs are asserting the same rights, making the same claims, and seeking the same relief for themselves and all other members of the proposed Class. The same is true of all members of the Settlement Class. Moreover, there are no individual

facts unique to any of the proposed Class Representatives that would make their claims atypical. As there is no conflict between the Plaintiffs' claims and those of the class, the typicality requirement is clearly met.

### D.   ADEQUACY OF REPRESENTATION

Adequacy of representation is a two-part inquiry that applies to both plaintiffs' counsel and plaintiffs. First, adequacy of representation asks whether plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation. In re Prudential, 148 F.3d at 312 (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995)). Second, "it serves to uncover conflicts of interest between named parties and the class they seek to represent." In re Prudential, 148 F.3d at 312 (citing Amchem Products v. Windsor, 521 U.S. 591, 594 (1997)). In this case, Class Counsel is highly qualified, experienced, and able to conduct this litigation. The representative Plaintiffs share the interest of the proposed class in seeking relief related to the Penny Arcades.

### E.   THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED

The proposed class also meets the requirements of Rule 23(b)(3). Rule 23(b)(3) allows class certification of settlement classes where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation. When assessing predominance and superiority, the court

may consider that the class will be certified for settlement purposes only, and need not consider whether the case would be manageable if actually brought to trial. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620 (1998); Prudential, 148 F.3d 283 at 321. In discussing predominance, the Third Circuit has reiterated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." Sullivan v. DB Invs., Inc., 667 F.3d 273, 298 (3d Cir. 2011) (en banc). See also In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 187 (D.N.J. 2003); In re Community Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005). As indicated by the Supreme Court in Amchem, "predominance is a test readily met in certain cases alleging consumer fraud. . ." 521 U.S. at 625. This is such a case.

Here, the core questions relate to the uniform defects in the Penny Arcade machines which result in undercounting of coins, TD Bank's alleged failure to disclose these defects, and its deceptive advertising and marketing in violation of consumer protection laws. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) is also readily satisfied. Here, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.   See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 533 (3d Cir.

2004). The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication." Id. at 534.

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy. See In re Mercedes-Benz, 213 F.R.D at 186 ("The Rule sets forth a non-exhaustive list of factors to be weighed.") The factors include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

The Settlement Class satisfies the superiority requirements because of the large number of class members, and the relatively small value of each claim in relation to the expenses of prosecuting a lawsuit. The alternative to class treatment would be numerous individual lawsuits and/or multiple lawsuits for relatively small amounts of damages, or the class members would not obtain any relief and TD Bank would not be held accountable for its wrongful acts. This would be uneconomical for potential plaintiffs because litigation costs would dwarf any potential recovery. By contrast, the class action vehicle "facilitates

32

spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes." Prudential, 148 F.3d 283 at 315-316.

In the Third Circuit, there is an additional requirement of ascertainability; the class must be currently and readily ascertainable based on objective criteria, meaning that there must be a reliable and administratively feasible way to identify class members. Coleman v. Commonwealth Land Title Ins. Co., 318 F.R.D. 275 (E.D. Pa. 2016). In this action, Account Holders can be easily identified by TD Bank's own records, and they account for more than 80% of the dollar volume and potential recovery. Non-Account Holders would have to submit Claim Forms and supply transaction dates, amounts, and supporting documentation in order to assert a total transaction amount larger than $500, which TD Bank could then check against its own records. Non-Account Holders who did not have supporting documentation would have to provide transaction dates and dollar amounts under penalty of perjury, which could also be checked against TD Bank's records, and could not receive a recovery larger than $1.30. In either case, TD Bank retains the right to dispute a claim or require additional information or documentation. The class is therefore ascertainable under the Third Circuit's requirements.

In sum, certification of the proposed Settlement Class is appropriate under Federal Rules of Civil Procedure 23(a) and

23(b)(3). This Court should certify the proposed class for settlement purposes.

## POINT IV

### THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED BY THE COURT

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Manual Fourth, §21.633. The Settlement Agreement provides for reasonable notice to prospective class members utilizing several methodologies designed to provide direct notice to as many class members as possible. Under Rule 23(e) and the relevant due process considerations, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-out of the class. In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283 at 326-27. However, neither Rule 23 nor due process considerations requires actual notice to every class member in every case. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Rather, "notice reasonably certain to reach most of those interested in objecting" is required "to safeguard the interests of all." Id.

In this case, the Parties have negotiated and agreed upon a comprehensive notice program consisting of several types of notice, including: Mailed Notice, Publication Notice, and Long-

34

Form Notice on the Settlement Website. Through these efforts, absent class members will receive adequate notice of the Settlement.

Finally, this Notice will include all necessary legal requirements and provide a comprehensive explanation of the Settlement in simple, non-legalistic terms. The notices contain all the information required by Rule 23(c); namely, the nature of the action, definition of the class, the class claims, issues or defenses, details informing class members that they may enter an appearance though an attorney if they desire; how to object; the time and manner of requesting exclusion, and the binding effect of the class judgment on members under Rule 23 (c)(3).

Under Rule 23(c), the Court should consider the contents of class notice as well as the method of dissemination. Bradburn Parent Teacher Store, Inc. v. 3M, 513 F. Supp. 2d 322, 328 (E.D. Pa. 2007); In re Prudential, 148 F.3d 283 at 327. Hence, the requirements for the content and dissemination of the Notice have been satisfied and the Notice should be approved.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order (a) conditionally certifying a class for purposes of settlement pursuant to Rule 23(b)(3); (b) appointing the named Plaintiffs as Class Representatives and their attorneys, previously named as Interim Class Counsel, as Class

Counsel; (c) granting preliminary approval and entering the Preliminary Approval Order annexed to the Motion; (d) directing that notice to Settlement Class Members be provided in the manner contemplated by the Settlement Agreement; (e) approving the Claims Administrator; and (f) scheduling the final fairness hearing for purposes of determining final approval of the Settlement, attorneys' fees and Class Representative Service Awards.

Dated: May 22, 2017

      /s/ Stephen P. DeNittis
Stephen P. DeNittis, Esquire
**DENITTIS OSEFCHEN, P.C.**
525 Route 73 North – Suite 410
Marlton, New Jersey 08053
*On behalf of Plaintiffs David
Spector, Regina Filannino-
Restifo*


And

Jeffrey Smith, Esquire
**WOLF HALDENSTEIN ADLER FREEMAN
  & HERZ, LLP**
270 Madison Avenue
New York, NY 10016
*On behalf of Plaintiff Regina
Filannino-Restifo*


Bruce Heller Nagel, Esquire
Robert H. Solomon, Esquire
Greg M. Kohn, Esquire
**NAGEL RICE, LLP**
103 Eisenhower Parkway
Roseland, New Jersey 07068
*On behalf of Plaintiffs
Christine Krulan, David Diaz and
Ryan Franco*

36

Michael Elliot Criden, Esquire
Lindsey Caryn Grossman, Esquire
Kevin Bruce Love, Esquire
**CRIDEN & LOVE, P.A.**
7301 SW 57th Court - Suite 515
South Miami, FL 33143
*On behalf of Plaintiff Juan
Carlos Macias*


John D. Radice, Esquire
Kenneth B. Pickle, Esquire
**RADICE LAW FIRM, P.C.**
34 Sunset Boulevard
Long Beach, NJ 08008
*On behalf of Plaintiff David
McEnerney*


Jeffrey H. Squire, Esquire
Lawrence P. Eagel, Esquire
David J. Stone, Esquire
**BRAGAR EAGEL & SQUIRE, P.C.**
885 Third Avenue - Suite 3040
New York, NY 10022
*On behalf of Plaintiff Jeffrey
Feinman*


Michael J. DeBenedictis,
Esquire
**DeBENEDICTIS & DeBENEDICTIS**
20 Brace Road - Suite 350
Cherry Hill, NJ 08034
*On behalf of Plaintiff Nona
Luce*

37